**ARTHUR E. CLEMONS v. STATE OF FLORIDA**

26 So. (2nd) 506             June Term, 1946
June 18, 1946              Division A

*C. J. Hardee,* for appellant.

*J. Tom Watson,* Attorney General, and *Reeves Bowen,* Assistant Attorney General, for appellee.

BUFORD, J.:

This appeal brings for review a judgment of the Criminal Court of Record of Hillsborough County adjudging the appellant, defendant below, guilty of the crime of murder in the second degree under an information charging that offense.

The appellant poses three questions for our consideration as follows:

"Question One:

"Where there is no evidence in the record to prove that the defendant killed deceased by 'an act imminently dangerous to another and evincing a depraved mind regardless of human life,' will a conviction for an offense of second degree murder lie?"

"Question TWO:

"Where a colored witness, Gussie Lee Jacobs, willfully perjured herself and said that she was the wife of deceased, and such witness was a material witness for the State and relied on by the jury to convict the defendant, and such testimony amounted to a fraud upon the court, said fact being unknown to the Court, the defendant, nor counsel for defendant, until after a conviction, should a new trial be granted?"

"Question Three:

"Where a woman claiming to be the wife of deceased wilfully perpetrated a fraud upon the court, upon the defendant, and upon justice, will a new trial be granted?"

We have carefully read and considered the testimony as reflected by the transcript of the record before us and our conclusion is that there is no basis in the record for the first question.

The evidence shows that the appellant shot the deceased with a pistol when the two parties were within some ten or twelve feet of one another. Deceased was shot by appellant three times. One of the bullets entered the abdomen; another passed through the left arm and then the abdomen and the third bullet entered the neck from the rear and severed the jugular vain.

The record shows that the last wound was the one which produced death and the deceased died within a few minutes after receiving this wound.

The evidence shows without contradiction that the deceased was standing near an automobile which was some ten feet from the back of the pool room, talking to the owner of the automobile who was then working on it, when the defendant came out of a back door of the pool room and spoke to the deceased. Moore who was the owner and was working on the automobile, testified that as soon as defendant spoke to deceased the shooting began; that he was not looking at either party when the shooting began but that he did look in time to see the defendant fire the last shot, and maybe one or more before that. He did not know how many times defendant shot but he saw him when he shot the last time and then saw him look at his pistol, shove it into his bosom and turn and walk back through the pool room.

The defendant interposed a plea of self-defense and testified that he shot the deceased because the deceased was coming at him with an open knife in a threatening manner and that he thought it was necessary to shoot the deceased to protect himself. There is evidence that a knife was found after the shooting either in the pocket of deceased or on the ground near the right hand of deceased, but all witnesses who testified about this testified that the knife was not open but was closed. So the jury was warranted in not believing that the defendant acted as a reasonably cautious and prudent man would have acted in the exercise of his right of self defense.

Uncontradicted evidence is that there had been no previous trouble between the parties and no threats were exchanged by either of them with the other at the time of the fatal shooting. In this respect this case differs from any that this writer has observed in his forty six years of experience as a lawyer defending persons charged with crime, as a prosecuting officer, as Attorney General and as a Justice of this Court in that there is not one bit of evidence tending to show why the defendant shot and killed the deceased, nor

is there any evidence to show, or tending to show, why the deceased should have wished to assault the defendant.

Another unusual aspect which is disclosed by the record is that it appears that the police officers and all others did everything which they could do, consistent with the performance of their duty, to favor the defendant.

The record also shows that the defendant had established and maintained a good reputation for peace and quietude and good citizenship. He had worked for one employer for more than twenty years without any complaint being lodged against him. The motive and reason, or cause, behind this tragedy is a mystery.

The second and third questions are based upon the action of the trial court in denying a motion for new trial, one of the grounds of which was: because of alleged newly discovered evidence. The newly discovered evidence was alleged to be to the effect that Gussie Lee Jacobs, who was a witness for the State, testified on the trial that deceased was her husband when in truth and in fact he could not have been her husband because she had a prior husband who was still living at the time deceased was killed. It was the contention of the appellant that Gussie Lee Jacobs committed perjury in testifying as she did about her relationship with deceased and that, therefore, the conviction was had on perjured testimony. Whether or not Gussie Lee and the deceased were husband and wife could not possibly have any bearing on the determination of defendant's guilt or innocence. As she did not attempt to testify as to any threats or as to aything which transpired at the scene of the fatal shooting, there was no ground shown which would warrant us in holding that the trial court committed reversible error in this regard.

So, the judgment must be affirmed.

So ordered.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., concur.